**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Michael Bird, | ) | No. CV-17-03241-PHX-SPL |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| DJO LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 73) and Defendant's Motion to Voluntarily Dismiss Without Prejudice its Counterclaims, or in the Alternative, Response in Opposition to Plaintiff Bird's Motion for Summary Judgment (Doc. 90).

**I.    BACKGROUND**[1]

**A.    Arbitration**

This dispute arises from an arbitration proceeding initiated by DJO LLC ("Defendant") against Michael Bird ("Plaintiff") and Bird Medical, LLC ("Bird Medical"). Defendant manufactures orthopedic medical devices. (Doc. 95 at 2) Plaintiff is the president and principal member of Bird Medical. (Doc. 95 at 1) In 2008, Defendant and Bird Medical entered into a "Distribution Agreement," whereby Bird Medical would sell Defendant's medical devices throughout Denver, Colorado. (Doc. 95 at 2) The Distribution

---

[1]    The following facts are undisputed unless otherwise specified.

Agreement included an arbitration provision. (Doc. 95-1 at 7) Plaintiff signed the Distribution Agreement in his official capacity as the president of Bird Medical. (Doc. 95-1 at 8) In addition, Plaintiff signed two addenda attached to the Distribution Agreement in his personal capacity—the "Sales Representative Acknowledgement" and the "Certification of Understanding and Compliance with DJO, LLC's Code of Ethics and Compliance Program." (Doc. 95-1 at 18-19) Both addenda were required to be signed by any Bird Medical employee who sold Defendant's products for a commission. (Doc. 95-1 at 1)

The parties operated under the Distribution Agreement until late 2015. (Doc. 95 at 3-4) Beginning in January of 2016, Bird Medical continued to distribute Defendant's products pursuant to a new agreement with a third party, ORP Surgical, LLC. (Doc. 95 at 4) That agreement lasted until approximately February of 2017. (Doc. 95 at 4)

In May of 2017, Defendant filed a demand for arbitration with the American Arbitration Association ("AAA"), asserting claims against Bird Medical and Plaintiff for breach of contract, breach of good faith and fair dealing, and conversion. (Docs. 74-1 at 47-55; 95 at 6) Plaintiff objected to the arbitration demand, arguing that he was not a party to the Distribution Agreement and was not subject to the arbitration provision. (Doc. 1-1 at 108) On August 2, 2017, the AAA issued its administrative determination finding that, absent a court order staying the case, the AAA would proceed with the arbitration against Plaintiff. (Doc. 1-1 at 124)

### B. Instant Action

On September 19, 2017, Plaintiff filed this lawsuit seeking a declaratory judgment determining that: 1) the Court, and not the AAA, is the sole body with authority to determine whether the claims asserted against Plaintiff are subject to arbitration; 2) as a non-party to the Distribution Agreement, Plaintiff is not subject to the arbitration provision; 3) Bird Medical is not Plaintiff's "alter ego;" 4) the nondisclosure provision underlying Defendant's breach of contract claim is void and unenforceable; and 5) Plaintiff is not liable for conversion of the alleged missing consigned inventory. (Doc. 1 at 6-9) Defendant

answered the Complaint and filed a Countercomplaint for conversion under the theory of piercing the corporate veil/alter ego. (Doc. 10)

On September 20, 2017, Plaintiff motioned the Court to stay the arbitration proceedings pending a determination of whether Plaintiff is bound by the arbitration provision in the Distribution Agreement. (Doc. 6) The Court granted the motion. (Doc. 39) On May 11, 2018, Plaintiff motioned for summary judgment regarding the arbitrability of the claims against him. (Doc. 29) The Court denied the motion without prejudice to allow limited discovery on the issue of alter ego/piercing the corporate veil. (Doc. 46) On August 23, 2019, after engaging in discovery, Plaintiff renewed its motion. (Doc. 73) Plaintiff requests that the Court grant summary judgment in his favor as to Claim One of the Complaint and Defendant's Countercomplaint.[2] (Doc. 73) On October 7, 2019, Defendant responded to the Motion for Summary Judgment and also motioned to voluntarily dismiss the Countercomplaint without prejudice. (Doc. 90) On November 5, 2019, Plaintiff filed a reply to the Motion for Summary Judgment and a response to Defendant's Motion to Dismiss. (Docs. 98, 99) On November 12, 2019, Defendant filed a reply to his Motion to Dismiss. (Doc. 103)

**II.    LEGAL STANDARD**

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is appropriate when: (1) no genuine issues of material fact remain; and (2) after viewing the evidence most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[2] Although Plaintiff requests a full summary judgment determination, he does not assert arguments regarding Claim Two in the Complaint. Therefore, the Court shall treat the Motion as one for Partial Summary Judgment.

3

In considering a motion for summary judgment, the court must regard as true the nonmoving party's evidence, if it is supported by affidavits or other evidentiary material. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). However, the nonmoving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57.

The moving party bears the initial burden of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact." *See Celotex Corp.*, 477 U.S. at 323. If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(c). But allegedly disputed facts must be material—the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

**III. DISCUSSION**

**A. Evidence Excluded from Consideration**

As an initial matter, Plaintiff argues that Defendant's Response to the Motion for Summary Judgment impermissibly relies on discovery obtained after the discovery deadline and in direct violation of this Court's Order. (Doc. 99 at 2) Plaintiff asserts that the Court should not consider the evidence when ruling on the Motion for Summary Judgment. (Doc. 99 at 2) Specifically, Plaintiff asserts that the following paragraphs in

Defendant's statement of facts should be excluded: 21-24, 27-29, 35-36, 39, 41, 44-49, 72-74, 81, 87-90, 92-105, 110, and 112-113. (Doc. 99 at 4) In response, Defendant asserts that it conducted a forensic examination in the arbitration case which unveiled several financial documents in favor of its position in this case. (Doc. 103 at 5) Defendant argues that all of the documents should have been produced in response to their discovery requests in this case, but Plaintiff failed to do so. (Doc. 103 at 5)

The record confirms that on March 15, 2019, Plaintiff motioned the Court for an extension of the discovery deadline to complete the pending forensic examination in the arbitration case. (Doc. 50) The Court granted the motion, and Defendant again requested an extension. (Docs. 65, 66) The Court denied the second motion for extension. (Doc. 68) The Court found that Defendant had not made a sufficient showing that the evidence produced in the forensic examination regarding the claims against Bird Medical was necessary to resolve the issues of arbitrability in this case. (Doc. 68)

Nevertheless, Defendant's Response relies on several documents obtained from the forensic examination. (Docs. 90, 95, 103) If Defendant believed that Plaintiff failed to make sufficient discovery disclosures as required under Rule 26, the proper method to address the issue was to file a motion to compel discovery or a Rule 37 motion for sanctions. A party may not, however, rely on information obtained outside the discovery deadline without the Court's consent. Therefore, as requested by Plaintiff, the Court will not consider any evidence that Defendant obtained through its forensic examination.

**B.     Plaintiff's Claims: Arbitrability**

Plaintiff argues that he is not the alter ego of Bird Medical, and therefore, he is not bound by the arbitration provision in the Distribution Agreement. (Doc. 73 at 6) In response, Defendant asserts that Plaintiff, as a non-signatory to the Distribution Agreement, is still subject to the arbitration provision under the traditional principles of contract and agency law. (Doc. 90 at 9) Specifically, Defendant asserts that the doctrines of incorporation by reference, direct benefit, and alter ego/piercing the corporate veil all compel Plaintiff to participate in the arbitration. (Doc. 90 at 10-13)

### 1. Incorporation by Reference

Defendant argues that this Court dismissed Plaintiff's first motion for summary judgment without prejudice, so the Court never made a final determination as to its original incorporation by reference arguments. (Doc. 90 at 8) Defendant maintains that Plaintiff is bound to the terms of the Distribution Agreement because he signed the two addenda documents in his personal capacity, which incorporated the Distribution Agreement by reference. (Doc. 90 at 10) This Court previously found that the addenda signed by Plaintiff did not clearly reference the Distribution Agreement as required by Arizona law. (Doc. 40 at 5-7) Defendant has not set forth any additional evidence for the Court to change that determination. Therefore, Plaintiff is not compelled to arbitrate under the incorporation by reference doctrine.

### 2. Direct Benefit

Next, Defendant argues that Plaintiff received a direct benefit from the Distribution Agreement. (Doc. 90 at 10-11) Specifically, Defendant asserts that, by signing the addenda, Plaintiff was permitted to exploit the Distribution Agreement for his own monetary gain. (Doc. 90 at 11) Defendant also maintains that the parties' dealings made it clear that Plaintiff was an intended third-party beneficiary of the Distribution Agreement. (Doc. 90 at 12-13)

The direct benefit or equitable estoppel theory provides that a non-signatory may be compelled to arbitrate under an agreement if the non-signatory has received a direct benefit from the contract containing an arbitration clause and, therefore, should be equitably barred from avoiding arbitration. *See Schoneberger v. Oelze*, 96 P.3d 1078, 1081 (Ariz. Ct. App. 2004), *superseded on other grounds by* Arizona Revised Statute § 14-10205.

Though Plaintiff was able to earn a sales commission after signing the addenda, the Court finds that such a benefit was indirect. The Distribution Agreement does not contemplate that Plaintiff would be the only person able to earn money under the contract—indeed, Bird Medical employed other sales representatives who were also required to sign the addenda. (Docs. 74-1 at 4; 95-1 at 1) Furthermore, Defendant asserts

no evidence that Plaintiff attempted to claim a unique benefit directly from the Distribution Agreement. *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778-79 (2d Cir. 1995). Therefore, the Court does not find that Plaintiff is compelled to arbitrate under the direct benefit doctrine.

### 3. Alter Ego/Piercing the Corporate Veil

Finally, Defendant argues that Plaintiff is compelled to arbitrate under the doctrine of alter ego/piercing the corporate veil. (Doc. 90 at 13) Plaintiff argues that Bird Medical operates as an independent business and Defendant cannot establish the required elements to pierce Bird Medical's corporate status. (Doc. 73 at 7)

In Arizona, the corporate status is not "lightly disregarded." *Chapman v. Field*, 602 P.2d 481, 483 (Ariz. 1979); *see also All Custom Exteriors, Inc. v. Bilyea*, No. 1 CA-CV 10-0702, 2011 WL 5964528, at *4 (Ariz. Ct. App. Nov. 29, 2011) (explaining that Arizona law treats limited liability companies the same as corporations for purposes of alter ego/piercing the corporate veil). The corporate status will be disregarded upon a showing of: (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice. *See Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991). The Court will analyze each of Defendant's arbitration claims separately.

#### a. Breach of Contract and Covenant of Good Faith and Fair Dealing

To establish unity of control, Defendant lists several examples: (1) Bird Medical was formed only after Plaintiff negotiated the Distribution Agreement with Defendant in his personal capacity; (2) Bird Medical makes yearly distributions to Plaintiff regardless of the business's performance; (3) there are several unexplained transfers from Bird Medical's bank account to Plaintiff's personal account; (4) there are several unexplained bank accounts listed on Bird Medical's balance sheet in 2013; (5) Plaintiff maintained insufficient bookkeeping for all of the consigned products in Bird Medical's possession; (6) a bank account is listed on Bird Medical's corporate records as a business reserve account but is maintained under Plaintiff's name; and (7) Plaintiff wrote off payments for

his family vehicle as a business expense. (Doc. 90 at 5, 15) The Court finds that, viewing the evidence in the light most favorable to Defendant, Defendant has set forth sufficient evidence to raise a genuine issue of material fact as to the unity of control between Plaintiff and Bird Medical.

As to the fairness prong, Defendant argues that it would be unfair to allow Plaintiff to escape liability for his personal bad acts that caused the issues in the arbitration. (Doc. 90 at 16-19) In the claim for arbitration, Defendant asserts that Plaintiff breach the Distribution Agreement and the implied covenant of good faith and fair dealing by intentionally disclosing confidential pricing information to third parties in an attempt to steal customers from Defendant. (Doc. 1-1 at 53-61) In support of this contention, Defendant asserts that most of the customers previously serviced by Defendant now purchase medical devices through Bird Medical's new contracted manufacturer. (Docs. 95 at 12-13; 95-1 at 64-65)

It is well-settled in Arizona that, "[w]hile it is true that 'directors are generally shielded from liability for acts done in good faith on behalf of the corporation, their status does not shield them from personal liability to those harmed as a result of intentionally harmful or fraudulent conduct.'" *Frank Lloyd Wright Found. v. Kroeter*, Nos. CV-08-1112-PHX-DGC, CV-08-1125-PHX-FJM, 2008 WL 5111092, at *4 (D. Ariz. Dec. 3, 2008) (quoting *Albers v. Edelson Tech. Partners L.P.*, 31 P.3d 821, 826 (Ariz. Ct. App. 2001)). The Court finds that Defendant asserts a genuine issue of material fact as to whether it would promote injustice to allow Plaintiff to be protected by Bird Medical's corporate status for his alleged bad faith acts in disclosing confidential information obtained via the Distribution Agreement. Therefore, Plaintiff is not entitled to summary judgment for the breach of contract and breach of good faith and fair dealing claims.

### b. Conversion

Regarding the conversion claim, although the Court finds that Defendant has set forth sufficient evidence to raise a genuine issue of material fact as to the unity of control prong, the Court further finds that Defendant fails to establish a genuine issue of material

fact as to the fairness prong.

First, Defendant again argues that it would be unfair to allow Plaintiff to escape liability for his bad acts that caused the issues in the arbitration. (Doc. 90 at 18-19) As stated before, Plaintiff should not be shielded from liability regarding his individual bad faith acts. Even so, Defendant's claim for conversion is not based on any alleged bad faith acts by Plaintiff. (Doc. 1-1 at 53-61)

In the alternative, Defendant argues that Plaintiff's loose management of Bird Medical's assets is enough to establish the unfairness prong because Bird Medical lacks sufficient funds to satisfy potential judgments by creditors such as Defendant. (Doc. 90 at 17) However, the bank statements disclosed by Plaintiff show that Bird Medical consistently maintained several thousands of dollars in its bank account. (Doc. 101 at 180-217) Defendant sets forth no other evidence to show that Plaintiff caused Bird Medical to be consistently underfunded or otherwise incapable of satisfying potential judgments. The Court finds that Defendant fails as a matter of law to establish that upholding Bird Medical's corporate status as to the conversion claim would sanction fraud or promote injustice. *Laborers Clean-Up Contract Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 524-25 n. 13 (9th Cir. 1984) (explaining that insolvency on its own does not equal an inequitable result and the fairness prong will be satisfied only upon a showing that a corporation is so underfunded that it is unable to meet its debts that may arise in the normal course of business). Therefore, Plaintiff cannot be compelled to arbitrate the conversion claim.

### C. Defendant's Countercomplaint

Defendant motioned the Court to dismiss its counterclaims without prejudice pursuant to Rule 41, arguing that whether Plaintiff is an alter ego of Bird Medical is irrelevant until Defendant obtains an award in the arbitration against Bird Medical. (Doc. 103 at 9) Defendant asserts that it is willing to withdraw the arbitration claims against Plaintiff in his personal capacity if the Court will dismiss the Countercomplaint in this case. (Doc. 103 at 9) Plaintiff objects to the Motion to Dismiss and the stipulation to dismiss the

arbitration claims, arguing that Defendant is seeking dismissal to avoid an adverse ruling on summary judgment. (Doc. 98 at 2) Instead, Plaintiff asserts that the Court should simply rule on the Motion for Summary Judgment. (Doc. 73 at 10) District courts generally follow the principle that "[v]oluntary dismissals without prejudice are disfavored when the plaintiff is 'plainly seeking to avoid an adverse judgment.'" *Raygarr LLC v. Emp'rs Mut. Cas. Co.*, No. CV-18-00246-TUC-RM, 2018 WL 4207998, at *5 (D. Ariz. Sept. 4, 2018) (quoting *Minn. Mining & Mfg. Co. v. Barr Labs., Inc.*, 289 F.3d 775, 784 (Fed. Cir. 2002)). At this stage in the proceeding, the Court finds that allowing a voluntary dismissal without prejudice would deprive Plaintiff of a final ruling on his Motion for Summary Judgment. Therefore, Defendant's Motion to Dismiss will be denied. Furthermore, for the same reasoning set forth in section III.B.3.b., the Court will grant Plaintiff's Motion for Summary Judgment regarding the Countercomplaint for conversion.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's Motion for Summary Judgment in part. Plaintiff is not subject to arbitrate Defendant's conversion claim. In addition, the Court will dismiss Defendant's Countercomplaint. However, the Court finds that there are still genuine issues of material fact as to whether Plaintiff may be held liable under the Distribution Agreement for the breach of contract and breach of good faith and fair dealing claims. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 73) is **granted in part** and **denied in part** as follows:

1. Plaintiff is not subject to arbitration regarding Defendant's conversion claim.
2. This case will move forward regarding the breach of contract and breach of good faith and fair dealing claims.
3. Defendant's Countercomplaint shall be dismissed with prejudice.

///

///

///

**IT IS FURTHER ORDERED** that Defendant's Motion to Voluntarily Dismiss Without Prejudice Its Counterclaims (Doc. 90) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk's Office shall enter judgment accordingly.

Dated this 6th day of March, 2020.

_____
Honorable Steven P. Logan
United States District Judge